IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. ) <br> THURMAN SONNY VAUGHN, and ) <br> TONI AQUILLARD, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> OKLAHOMA PROPERTY AND ) <br> CASUALTY INSURANCE GUARANTY ) <br> ASSOCIATION, ) <br> ) <br> Defendant. ) | Case No. CIV-04-1278-M |

## ORDER

Before the Court is defendant's Motion for Partial Summary Judgment, filed April 20, 2006. On May 30, 2006, plaintiffs filed their response, and on June 7, 2006, defendant filed its reply. Based upon the parties' submissions, the Court makes its determination.

I.  Introduction

On April 1, 2000, Thurman "Sonny" Vaughn was involved in an automobile accident with Joseph W. Lee. As a result of the collision, Mr. Vaughn was injured. Mr. Lee's vehicle was covered by an insurance policy with Republic Casualty Company ("Republic"). On March 30, 2001, Mr. Vaughn filed a lawsuit against Mr. Lee.

Thereafter, Republic was declared insolvent. Defendant Oklahoma Property and Casualty Insurance Guaranty Association[1] ("Guaranty Association"), as statutory successor of Republic,

---

[1]The Guaranty Association was created pursuant to the Oklahoma Property and Casualty Insurance Guaranty Association Act ("Guaranty Act"), Okla. Stat. tit. 36, §§ 2001, *et seq.* The Guaranty Association was established "to protect claimants and policyholders from financial losses associated with the insolvency of an insurance company." *Oglesby v. Liberty Mut. Ins. Co.*, 832 P.2d 834, 838 (Okla. 1992).

assumed Mr. Lee's defense. The Guaranty Association requested that its attorney settle Mr. Vaughn's claim for five thousand dollars. Mr. Vaughn rejected the offer to settle.

On or about September 1, 2004, Mr. Vaughn's attorney advised the Guaranty Association that he was authorized to settle Mr. Vaughn's claim for the maximum amount of insurance available. The Guaranty Association's attorney responded to and accepted the settlement offer, and Mr. Vaughn's claim was settled for four thousand nine hundred twenty-two dollars and sixty cents. The settlement amount was determined by reducing the Republic policy limit of ten thousand dollars by the five thousand dollars in medical pay coverage Mr. Vaughn had received from his own insurance carrier and by seventy-seven dollars and forty cents for an alleged payment made by Medicare on behalf of Mr. Vaughn.[2]

Plaintiffs have filed the instant action alleging that the Guaranty Association's conduct regarding Mr. Vaughn's claim and other claims violates the False Claims Act ("FCA"), and specifically 31 U.S.C. §§ 3729(a)(1),(2),(3). Plaintiffs also assert claims for unjust enrichment and payment by mistake.

II.   Discussion

The Guaranty Association now moves the Court to find that the Guaranty Act, pursuant to the McCarran-Ferguson Act, 15 U.S.C. § 1012, preempts the FCA.[3] The McCarran-Ferguson Act

---

[2] It is disputed whether it is the Guaranty Association's policy to offset Medicare payments, and it is disputed who initially stated that the settlement amount would be offset by the Medicare payment.

[3] In their response, plaintiffs assert that the conduct involved in this action is governed by the Medicare Secondary Payer's Act and not the FCA and, therefore, whether the FCA is preempted by the Guaranty Act has no bearing on the merits of plaintiffs' claims. In their Complaint, however, plaintiffs do not assert any separate claims under the Medicare Secondary Payer Act but, instead, allege various claims under the FCA. *See* Counts One through Three of plaintiffs' Complaint. The

provides: "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b).

> In other words, the Act bars the application of a federal statute if (1) the federal statute does not specifically relate to the business of insurance; (2) a state statute has been enacted for the purpose of regulating the business of insurance; and (3) the federal statute would invalidate, impair, or supersede the state statute.

*Bancoklahoma Mortgage Corp. v. Capital Title Co., Inc.*, 194 F.3d 1089, 1098 (10th Cir. 1999).

In the case at bar, the parties agree that the FCA does not specifically relate to the business of insurance and that the Guaranty Act was enacted for the purpose of regulating the business of insurance. Thus, the Court finds that the only issue in dispute is whether the FCA would invalidate, impair, or supercede the Guaranty Act.

The term "invalidate" ordinarily means "to render ineffective, generally without providing a replacement rule or law," and the term "supersede" ordinarily means "to displace (and thus render ineffective) while providing a substitute rule." *Humana Inc. v. Forsyth*, 525 U.S. 299, 307 (1999) (internal quotations omitted). Further, the term "impair" ordinarily means "[t]o weaken, to make worse, to lessen in power, diminish, or relax, or otherwise affect in an injurious manner." *Id.* at 309-310 (internal quotations omitted). Finally, the Supreme Court has interpreted the text of § 1012(b) as follows:

> When federal law does not directly conflict with state regulation, and when application of the federal law would not frustrate any declared state policy or interfere with a State's administrative regime, the McCarran-Ferguson Act does not preclude its application.

---

Court, thus, finds that Counts One through Three of plaintiffs' Complaint are governed by the FCA and that it is appropriate to determine whether these counts are preempted by the Guaranty Act.

3

*Id.* at 310.

> The purpose of the Guaranty Act is
>
>> to provide a mechanism for the payment of covered claims under certain insurance policies, to avoid excessive delay in payment, to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers.

Okla. Stat. tit. 36, § 2002. To further this purpose, under the Guaranty Act, the Guaranty Association is immune from any cause of action for any actions taken pursuant to the Guaranty Act. Okla. Stat. tit. 36, § 2019. Specifically, § 2019 provides:

> There shall be no liability on the part of and no cause of action of any nature shall arise against any member insurer or its agent or employees, the Association, its directors, employees or agents, for any action taken by them in the performance of their powers and duties under [the Guaranty Act].

Okla. Stat. tit. 36, § 2019. Generally, immunity provisions found in state guaranty acts exist to ensure the existence of the guaranty associations so that they may continue to protect insureds after an insurer has been declared insolvent. *See, e.g., Mosley v. Indus. Claim Appeals Office of the State of Colo.*, 119 P.3d 576, 580 (Colo. Ct. App. 2005) (holding that imposition of penalties on state guaranty association would hamper guaranty association's ability to further its statutory purpose); *Breaux v. Klein*, 572 So.2d 656, 659 (La. Ct. App. 1990) (holding that imposition of penalties against state's guaranty association "could potentially threaten the very existence of the insurance guaranty fund which has as its avowed statutory purpose the avoidance of excessive delay in payment and the avoidance of financial loss to claimants or policyholders.").

Having carefully reviewed the parties' submissions, the FCA, and the Guaranty Act, the Court finds that application of the FCA would frustrate the purpose of the Guaranty Act.

4

Specifically, the Court finds that the application and imposition of civil penalties, treble damages, and attorney fees under the FCA would frustrate the Guaranty Act's purpose to provide a mechanism for the payment of covered claims, avoid excessive delay in payment, and avoid financial loss to claimants or policyholders.  Further, the Court finds that application of the FCA would invalidate the immunity provision of the Guaranty Act, further frustrating its purpose.  The Court, therefore, finds that the FCA would invalidate and impair the Guaranty Act and that pursuant to the McCarran-Ferguson Act, the Guaranty Act preempts the FCA.

III.    Conclusion

Accordingly, for the reasons set forth above, the Court GRANTS the Guaranty Association's Motion for Partial Summary Judgment [docket no. 63].  The Court, thus, finds that Counts One, Two, and Three of plaintiffs' Complaint are preempted by the Guaranty Act.

**IT IS SO ORDERED this 15th day of August, 2006.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE